OPINION OF THE COURT
Joseph Silverman, J.
The three defendants are accused of the crimes, inter alla, of aggravated harassment in violation of section 240.30 (3) of *698 the Penal Law and section 40-c of the Civil Rights Law.[1] They move jointly to dismiss both charges on the ground that those sections violate their First Amendment right to freedom of speech. In support of their position they cite the recent United States Supreme Court decision R.A.V. v City of St. Paul, Minn. (505 US —, 112 S Ct 2538, 120 L Ed 2d 305 [1992]).[2]
The accusatory instrument alleges that the three defendants, acting in concert, approached the two complainants, and one of the defendants stated, "We don’t want any Spies or Niggers in the neighborhood.” The defendants then punched and kicked the complainants causing them injury.
In R.A. V. (supra), the Supreme Court ruled unconstitutional a St. Paul bias-motivated crime ordinance, because it found the law violated the First Amendment of the United States Constitution. This local ordinance made it unlawful whenever a person: "places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.”
The conviction under this ordinance involved the burning of a cross in the predawn hours inside the fenced yard of a black family. As interpreted by the Minnesota Supreme Court, the ordinance prohibited symbols or displays that amounted to "fighting words.” These are words which "inflict injury or tend to incite an immediate breach of the peace.” (Chaplinsky v New Hampshire, 315 US 568, 572 [1942].)
*699 The Supreme Court found that the ordinance was "facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses.” (R.A.V. v City of St. Paul, Minn., supra, 505 US, at —, 120 L Ed 2d, at 316.)
The First Amendment prohibits any regulation of individual speech or thought because of governmental disapproval of the ideas expressed. (R.A.V. v City of St. Paul, Minn., supra, 505 US, at —, 120 L Ed 2d, at 317.) However, this proscription is not an absolute one. It has long been recognized that certain speech does not fall within the purview of the First Amendment’s protection. Speech may be regulated or prohibited if it serves no useful purpose and there is a compelling societal interest to prohibit it. (Chaplinsky v New Hampshire, 315 US 568, supra.)
In Chaplinsky (supra), the Supreme Court upheld a conviction for directing offensive language against another person which amounted to "fighting words.” The Court found no constitutional protection because such utterances are not an "essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.” (Supra, at 572.)
In R.A.V. (supra) the Supreme Court did not overrule the "fighting words” doctrine of Chaplinsky (supra). It reiterated what it had said in Chaplinsky, that "fighting words” are not protected because while such words may express an idea, they are not an "essential part of any exposition of ideas.” (R.A.V. v City of St. Paul, Minn., supra, 505 US, at —, 120 L Ed 2d, at 319.) The person using fighting words may do so with the intent of expressing his beliefs, but his mode of expression, viz., fighting words, is socially unacceptable and therefore may be banned. (R.A.V. v City of St. Paul, Minn., supra, 505 US, at —, 120 L Ed 2d, at 324.)
While the goal of the St. Paul ordinance was to regulate "fighting words,” its constitutional infirmity was that it did not ban all fighting words, only bias-related words. The Court found that this amounted to content discrimination, which rendered the statute invalid, unless it could be shown that the regulation was reasonably necessary to achieve compelling societal interests. The Court found that the law did not meet this test. (R.A.V. v City of St. Paul, Minn., supra, 505 US, at —, 120 L Ed 2d, at 326.)
*700 Similarly, the actions of an individual that involve "symbolic” speech may be regulated if there is a "sufficiently important government interest in regulating the nonspeech element” (United States v O’Brien, 391 US 367, 376 [1968]). In O’Brien, a conviction for violating the law which prohibited the mutilation of a draft card was upheld even though the defendant claimed his burning of his draft card was a protest and, therefore, protected by the First Amendment. "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech’ whenever the person engaging in the conduct intends thereby to express an idea.” (Supra, at 376.)
In this case, the defendants argue that they are being prosecuted for the content of the language that they allegedly used during the commission of the crime. The prosecution is, therefore, for content-related fighting words.
The People’s position is that the prosecution is based on the defendants’ conduct and not on their use of "fighting words.”
The crimes of aggravated harassment (Penal Law § 240.30 [3]) and Civil Rights Law § 40-c are similar. The provisions of both crimes make it illegal to strike, shove, kick or otherwise subject another person to physical contact, or attempt or threaten to do the same because of the "race, color, religion or national origin of such person.”
The behavior which is proscribed by these statutes is not bias-related fighting words, as in the St. Paul statute. Rather, the New York statutes target the defendants’ physical actions; without those physical actions, there would be no prosecution pursuant to the statutes. What distinguishes these crimes from the violation of simple harassment (Penal Law § 240.25 [l])[3] is the added factor that the acts are committed because of bias towards the victim of the harassment.
Thus, harassment becomes more serious when it is committed because of a bias against the victim. Defendants argue that their actions are being treated more seriously because of their alleged bias and that this violates their First Amendment right to hold and express such beliefs.
In reviewing the constitutionality of a law, there is a *701 presumption that it is valid and that there was a need for the legislation. (Matter of Quinton A., 49 NY2d 328 [1980].)
Based upon a reading of the statutes, the intent of the Legislature in enacting the challenged law was not to punish an individual for biased thought or expression. Rather it was "to prohibit violence and physical intimidation based upon bigotry.” (People v Grupe, 141 Misc 2d 6, 8-9 [Crim Ct, NY County 1988], supra.)
The statutes do not make certain acts punishable because of the motive of the defendant but enhance the punishment for those acts because of the motive. The Penal Law prohibits harassment. Under the challenged statutes, the crime becomes more serious because of a defendant’s reason for harassing the victim.
This distinguishes the New York law from the St. Paul ordinance. In R.A.V. (supra), the activity of the defendant became criminal only when his actions amounted to the specifically proscribed fighting words. In the statutes challenged herein, the actions are criminal whether or not accompanied by a bias motive. The presence of a bias motive increases the seriousness of the crime.
The Legislature has differentiated the seriousness of other criminal behavior based on the mens rea of the defendant or the age or mental capacity of the victim. As long as these distinctions bear a rational relationship to a legitimate purpose they are valid. (State of Oregon v Beebe, 67 Ore App 738, 600 P2d 11 [1984].)
On the civil side of the law, numerous Federal and State laws exist that prohibit discrimination in housing, in the workplace, etc. These have been upheld as legitimate exercises of government power.
The State has the same interest in protecting the rights of victims and discouraging crimes against them because of their race, color, religion or national origin. Bias-related crimes have negative consequences on their victims and on society.
Even if one were to accept the defendants’ argument that the statutes’ scope includes punishing a defendant for his biased thoughts, the laws are not overly broad, because the thoughts are not punishable unless accompanied by already proscribed criminal conduct. As was noted by the Supreme Court in Chaplinsky (supra) and O’Brien (supra), the First Amendment is not without limitations and does not protect speech and actions which are not a legitimate expression of *702 ideas. In R.A.V. (supra), the Supreme Court stresses that where the "mode” of expression is not socially acceptable, then the government may prohibit its expression if there is a compelling societal interest.
The act of "harassment” is prohibited by a separate law. It is this intolerable "mode” of expression and not the idea that is being communicated that Penal Law § 240.30 (3) and Civil Rights Law § 40-c seek to prohibit. Society has a compelling reason for prohibiting such a "mode” to promote peace and harmony among its citizens.
The court finds that the challenged statutes do not violate the First Amendment and are a valid exercise of police power.

. Section 240.30 (3) of the Penal Law defines the crime of aggravated harassment "when, with intent to harass, annoy, threaten or alarm another person, [a person] [s]trikes, shoves, kicks, or otherwise subjects another person to physical contact, or attempts or threatens to do the same because of the race[,] color, religion or national origin of such person.”
Section 40-c (2) of the Civil Rights Law states "no person shall, because of race, creed, color, national origin, sex, marital status or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of this state.”

. The charge of aggravated harassment has been held to be constitutional by Criminal Court Judge Marcy Kahn in People v Grupe (141 Misc 2d 6 [1988]). Judge Kahn’s decision predates the Supreme Court decision in R.A.V. (supra).

. Section 240.25 (1) of the Penal Law provides that "[a] person is guilty of harassment when, with intent to harass, annoy or alarm another person * ** * [h]e strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same”.